# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1390 | **DATE** | 3/6/2002 |
| **CASE TITLE** | Riva Technologies, Inc. vs. Zack Electronics, Inc., and Dennis Awad | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 3/15/2002 at 9:00 A.M.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Plaintiff's motion to compel the return of its documents [doc. # 27-1] is denied. The Court orders that Riva and Wolf, Moskowitz, Holland & Matern ("WMH") establish a method of posting security for the alleged $230,000.00 due and owing in attorneys' fees. The Court further directs that WMH immediately assemble the documents being held subject to the lien, so that they can be produced without delay once the security is posted. At this time, the Court will not set forth the specific security arrangement that will be necessary, but will leave it to the parties, acting in good faith, to determine the amount and kind of security that will suffice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | MAR 0 7 2002 date docketed |
| ✓ | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| JJ (courtroom deputy's initials) | 02 MAR -6 PM 2:11 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

Document Number: 38

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RIVA TECHNOLOGIES, INC., an Illinois corporation d/b/a "Joseph Electronics," <br><br> Plaintiff, <br><br> vs. <br><br> ZACK ELECTRONICS, INC., a California corporation, and DENNIS AWAD, <br><br> Defendants. | No. 01 C 1390 <br><br> Magistrate Judge Schenkier |

DOCKETED
MAR 07 20[..]

## MEMORANDUM OPINION AND ORDER

Plaintiff, Riva Technologies, Inc., has moved to compel the return of documents held by its former counsel, Wolf, Moskowitz, Holland & Matern ("WMH") (doc. # 27). Riva claims that discovery in the underlying case will be impeded if WMH is permitted to retain the documents. WMH, however, has asserted a common law attorney's retaining lien, and offers to return the documents to plaintiff only after plaintiff has paid or posted adequate security for the disputed attorney's fees that Rive allegedly owes to WMH. In support of its motion to compel, Riva raises two main arguments to circumvent WMH's common law retaining lien: (1) Riva claims that although the documents were given to WMH for the purpose of litigation, WMH partner Steven Wolf's tenure as a director of Riva during the attorney-client relationship confers upon Wolf (and thus WMH) the duty to return the corporate documents; and (2) Riva claims that under the Northern District's Rule of Professional Conduct, Local Rule ("LR") 83.51.16(d), WMH is ethically obliged to return the documents to plaintiff so as to avoid causing prejudice to Riva in this litigation.

38

For the reasons set forth below, the Court finds that Riva's arguments are insufficient to trump WMH's common law retaining lien. Accordingly, Riva's motion is denied, and WMH will not be required to produce the documents until Riva either (1) resolves the fee dispute with WMH, or (2) posts security in lieu of the documents.

## I.

We begin by relating the relevant factual background. While the exact date is not clear, sometime in the fall of 2000, WMH was initially retained by Charles Annella ("Annella") and Yohay Hahamy ("Hahamy"), now Riva's principals, to assist them in forming Riva (Pl. Mem. at 2, 9; WMH Mem. at 9). Steven B. Wolf, a partner at WMH, was instrumental in formation of the attorney-client relationship between Mr. Annella, Mr. Hahamy and WMH (Pl. Mem. at 2). At the time, Messrs. Annella and Hahamy were Riva's only shareholders and directors and each owned 50 percent of the 200 shares of issued and outstanding common stock of Riva (WMH Mem. at 9). Messrs. Annella and Hahamy then each issued to Mr. Wolf one share of Riva stock, and elected him as a third director to act as a tie-breaker in the event of a deadlock between Messrs. Annella and Hahamy (WMH Mem. at 9). Mr. Wolf prepared the documents to transfer one share each from Messrs. Annella and Hahamy to himself, and he further amended the Bylaws of Riva to provide for three directors (WMH Mem. at 9).

After forming Riva, WMH, primarily through Mr. Wolf, represented Riva in connection with the negotiation of the underlying asset purchase agreement between Riva and defendant Zack Electronics, Inc. ("Zack") (Pl. Mem. at 2; WMH Mem. at 3). An asset purchase agreement was signed on December 29, 2000 and the acquisition closed on January 23, 2001 (Pl. Mem. at 3; WMH Mem. at 3). Within days of closing, Riva and Zack became embroiled in disputes concerning the

performance, *vel non*, of certain post-closing obligations under the asset purchase agreement (Pl. Mem. at 2; WMH Mem. at 3). Riva again turned to WMH for legal assistance, which led to the filing of the underlying litigation (Pl. Mem. at 2). WMH accepted the employment and started preparing for litigation without having memorialized a fee agreement (Pl. Mem. at 4; WMH Mem. at 7). The fee arrangement regarding this representation remained oral for five (5) months (from just before February 27, 2001, when the suit was filed, to July 17, 2001, the date the retention letter was signed) (Pl. Reply at 6).

During the course of the litigation, a dispute arose between WMH and Riva regarding WMH's attorney's fees (Pl. Mem. at 5; WMH Mem. at 5). Riva terminated WMH on August 31, 2001 as its counsel and retained new counsel to proceed in the litigation (Pl. Mem. at 6, Ex. A). On September 4, 2001, Mr. Wolf resigned as director (WMH Mem. at 10).

Riva's new counsel now seeks to have certain of Riva's non-work product documents from WMH to continue litigating the suit against Zack (Pl. Mem. at 2). WMH has asserted a common-law attorney's retaining lien to induce the payment allegedly owned to it by Riva (WMH Ex. F), which allegedly is some $231, 000.00 (Pl. Mem. at 6).[1] Riva claims that it should not be required to pay this money, asserting most of these fees were: (1) attributable to the litigation rather than "post-closing" matters, and that fees for the litigation were subject to a $25,000.00 cap before the arrangement converted into a contingency agreement (Pl. Reply at 7), and (2) the fees claimed are excessive (Pl. Mem. at 5-6).

---

[1]We note that WMH originally asserted an Illinois statutory lien as well as an Illinois common law lien. Under the Illinois Attorney's Lien Act, 770 ILCS 5/1, a statutory lien is a non-possessory lien that "attaches only to the proceeds recovered by the attorney through his professional services." *Upgrade Corp. v. Michigan Carton Co.*, 410 N.E.2d 159, 161 (1st Dist. 1980). Thus, it would appear that the statutory lien would not apply here, as the property here is not proceeds but instead physical property (Riva's papers). In any event, WMH has withdrawn its assertion of a statutory basis for the lien (*see* WMH Mem. at 10-11 and Ex. E), and thus we need not address that issue.

## II.

We begin with the proposition that because federal common law does not recognize an attorney's retaining lien, federal courts are to apply the common law attorney's retaining lien of the state in which the court sits. *Lucky-Goldstar International, Inc. v. International Manufacturing Sale Co., Inc.*, 636 F. Supp. 1059, 1062 (N.D. Ill. 1986). Here, "Illinois common law recognizes an attorney's retaining lien to retain papers . . . *received from his client in the course of his professional employment* . . . until the parties settle their fee dispute or the client posts adequate security for payment." *Id.* at 1061 (emphasis added). As Riva concedes (Pl. Reply at 1-2 n.1), this Court does not have jurisdiction to decide the underlying fee dispute, which must be reserved for resolution in state court. *Lucky-Goldstar*, 636 F. Supp. at 1063. However, this Court does have jurisdiction to determine whether, notwithstanding the lien, WMH must produce the withheld documents in this litigation, without Riva posting security. For the reasons set forth below, we find that WMH need not do so.

## A.

Riva asserts that as a director, Mr. Wolf owed Riva fiduciary duties. Thus, Riva argues, notwithstanding any retaining lien by WMH, Mr. Wolf "was obligated to return the documents sought in this motion when Riva initially requested those documents" (Pl. Mem. at 9).

To the extent that Riva is claiming that Mr. Wolf's capacity as a lawyer for Riva must be disregarded because he also was one of Riva's directors, we disagree. Mr. Wolf first served Riva in his capacity as an attorney, and continued in this primary attorney role even after he was made a director of Riva. Whether serving in these dual capacities created a conflict for Mr. Wolf is governed by LR 83.51.7(b) which states, in pertinent part, that "[a] lawyer shall not represent a client

4

if the representation of that client may be materially limited by the lawyer's ... own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected: and (2) the client consents after disclosure."

Riva has offered no argument that Mr. Wolf's position as a director may have "materially limited" his representation of Riva. Moreover, Mr. Wolf apparently did not believe this role as director would affect his representation of Riva, and Riva does not argue that Mr. Wolf could not have reasonably believed that there was no conflict in the dual roles. We are unwilling to endorse a general rule that would say a lawyer can never represent a client and serve as an officer or director, as that kind of broad proscription is not required by LR 83.51.7. Rather, the Committee Comments to LR 83.51.7 explain that a dual role should not be undertaken if there exists a "... material risk that the dual role will compromise the lawyer's independence of professional judgment." We see nothing in the particular circumstances surrounding Mr. Wolf's representation of Riva that would have created a material risk that Mr. Wolf's role as a director would compromise his role as an attorney representing Riva. Mr. Wolf was assigned a token number of the shares, leaving Messrs. Hahamy and Annella with control of 99 percent. There is no evidence that Mr. Wolf ever acted in his director capacity, which leads this Court to believe that Mr. Wolf was intended solely to serve as a tie-breaker in the event of a deadlock if one occurred. Certainly, there is no evidence that Mr. Wolf otherwise wielded enough corporate control to affect the direction of Riva, or to use his position as director to advance his personal interests as a lawyer at the expense of the corporation.

Further, LR 83.51.7 permits a client to waive any conflict by consent. Neither the rule nor the Committee Comments state that this consent must be expressed in writing. And, from the facts presented to this Court, client consent in the instant case fairly may be implied. *See, e.g., SWS*

5

*Financial Fund. v. Salomon Bros., Inc.*, 790 F. Supp. 1392, 1399 (N.D. Ill. 1992) (consent to a dual representation may be constructive or implicit). Messrs. Annella and Hahamy affirmatively requested that their attorney also serve as director. While the Committee Comments to LR 83.51.7 says a lawyer should not ask for consent to waive a conflict situation if there is a material risk that his or her independence as an attorney would be compromised, we already have found that is not the case here. According to LR 83.51.7, Riva's consent – given at the time Mr. Wolf was made director – amounts to a waiver of any conflict claim now raised by Riva.

### B.

Having found no ethical bar to Mr. Wolf's dual representation of Riva and service as one of its directors, we consider the capacity in which he obtained the documents now being withheld under the lien. Riva has offered no argument that Mr. Wolf obtained these documents for use in his limited role as director. By contrast, it seems evident that Mr. Wolf would obtain these documents in his role as counsel – a conclusion that is fortified by the fact that Riva's attorneys now want these same documents for use in representing Riva in this litigation. As a result, in these circumstances, we do not believe that Mr. Wolf's role as a director deprives him of the common law lien that he has invoked as an attorney. To hold otherwise would lead to the result that an attorney who serves in a dual director-attorney capacity never would be able to assert a common law lien. Riva has not cited any Illinois law to support such a sweeping result, and we do not believe such a result is warranted.

## III.

Riva's second argument offered to overcome WMH's retaining lien is based on LR 83.51.16(d), which states in pertinent part that a lawyer, upon the conclusion of his services, is to deliver to the client "all papers and property to which the client is entitled." Riva claims that this ethical rule conflicts with – and supersedes – the Illinois common law rule that "if an attorney is properly asserting the retaining lien, then the client is not entitled to the property," *Lucky-Goldstar*, 636 F. Supp. at 1062, on the theory that "the mere existence of a legal right does not entitle a lawyer to stand on that right if ethical considerations require that he forego it." *Id.* at 1063.

At the threshold, we reject WMH's contention that LR 83.51.16 does not apply at all here, because WMH did not voluntarily withdraw from its representation of Riva but instead was fired (WMH Mem. at 13). The text of the rule specifically states that it applies to withdrawals that occur when "the lawyer is discharged by the client." LR 83.51.16(a)(4). In addition, the Committee Comments specifically address the situation of discharge. The comments note that a client "has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." In addition, the comments specifically address the duty of the lawyer to take "all reasonable steps to mitigate the consequences to the client" of a termination of representation, "[e]ven if the lawyer has been unfairly discharged." WMH offers no explanation of why LR 83.51.16 does not apply in light of the plain language of the rule and the accompanying comments, and we can find none.

That said, the Court also does not believe that Riva is correct in asserting so stark a contrast between the attorney's rights under an Illinois common law lien and the attorney's obligations under LR83.51.16. Riva focuses on the requirement under LR 83.51.16(d) that a lawyer "shall not

withdraw from employment until the lawyer has taken reasonable steps to avoid foreseeable prejudice to the rights of the client, including . . . delivering to the client all papers and property to which the client is entitled." However, this rule requires WMH only to deliver those papers and property to which Riva is "entitled," and if WMH has a proper common law lien, then Riva is not entitled to those documents – absent resolution of the fee dispute or the posting of security until the dispute is resolved. *See Lucky-Goldstar*, 636 F. Supp. at 1062 ("In the context of an attorney's retaining lien, we believe the 'entitled to' standard begs the question"). What's more, the commentary to LR 83.51.16 expressly states that while a discharged lawyer must take reasonable steps to assist the client so as to mitigate the consequences of the withdrawal, the lawyer still "may retain papers as security for a fee only to the extent permitted by law."

Thus, LR 83.51.16 and its accompanying commentary make clear that the rule does not override the Illinois common law retaining lien, but instead coexists with it. In this case, Riva offers no argument that WMH lacks a proper retaining lien at common law. To the extent that the attorney has a proper retaining lien, LR 83.51.16 does not require an attorney to abandon it. As a result, we reject Riva's contention that LR 83.51.16 requires WMH to produce the documents notwithstanding the common law lien.

However, while the fee dispute is for Riva and WMH to resolve (whether voluntarily or in another forum), the continued retention of documents by WMH has ramifications for the present lawsuit. The documents withheld likely include some that are discoverable in this lawsuit. Thus, as was the case in *Lucky-Goldstar*, we are left with the "task of deciding how to effectively provide access to the documents necessary to the underlying action without prejudicing the rights of either party to a [fee] controversy we have no authority to resolve." 636 F. Supp. at 1063. We note that

8

there is a rather straightforward means of accomplishing this result: that is for Riva to provide a bond or other security, which would allow for the release of the documents.

Relying on *Lucky-Goldstar*, Riva argues that no security should be required (*see generally* Pl. Reply at 6-9). However, we note that in *Lucky-Goldstar* the court conditioned the production of documents on the "defendants providing security in place of the retaining lien." 636 F. Supp. at 1065. In this case, we believe that a review of the factors considered in *Lucky-Goldstar* likewise shows that production of documents here should be based on Riva providing security in place of the retaining lien.

*First,* we consider the financial situation of Riva. *Lucky-Goldstar* suggest that an attorney should forego asserting a retaining lien when the client makes a clear showing that it is financially unable to pay. 636 F. Supp. at 1064. But here, Riva does not assert an inability to pay, but rather disputes whether it should have to pay. Indeed, Riva suggests that its ability to pay is a factor that would make a lien unnecessary (Pl. Reply at 2). In any event, Riva has made no clear showing of need that would counsel in favor of requiring WMH to forego its lien rights.

*Second*, we consider the sophistication of the client in dealing with lawyers. *Lucky-Goldstar*, 636 F. Supp. at 1063. Riva claims that this factor cuts in its favor, since WMH were the lawyers (Pl. Reply at 6, 7). But, as evidenced by their ability to run a corporation, Messrs. Annella and Hahamy possess the requisite sophistication intended by the *Lucky-Goldstar* court. *Id.* at 1064 (mere standing as business client to firm suffices). Were it otherwise, any client who is not a lawyer could seek to overcome the retaining lien on the ground that he or she was less sophisticated than the lawyer.

*Third,* we consider whether the client clearly understood and agreed to pay the amount now owing. *Lucky-Goldstar,* 636 F. Supp. at 1063. That, of course, is a matter of dispute here. But the

9

parties do not dispute that there was a fee agreement. Messrs. Annella and Hahamy made their own handwritten corrections to the contract, and then signed it. There also is no dispute that the retention contract set forth Riva's agreement to use WMH's services in two respects: for post-closing matters (billed at a straight hourly rate), and for litigation (billed at an hourly rate up to a $25,000 cap, with a contingency thereafter). What is disputed here is whether certain time spent is attributable to one category or the other, and the reasonableness of the time spent. As to the latter point, that kind of dispute is not uncommon, and a purpose of a retaining lien is to provide the attorney with leverage in the case of such a dispute. As to the former dispute (to the extent it still matters, in light of the fact that any suit to collect fees by WMH now will be based on *quantum meruit*), that is something that will be sorted out if the matter is litigated. It does not weigh in favor of requiring WMH to abandon the lien.

*Fourth*, this Court must consider whether continuation of the retaining lien would prejudice the important rights or interests of the client. *Lucky-Goldstar*, 636 F. Supp. at 1063. But the kind of prejudice discussed in *Lucky-Goldstar* (comprising the ability to defend a criminal matter or to defend a similarly important personal liberty, are not present here). And, any prejudice to the pursuit of this action can be eliminated by the posting of a bond.

*Fifth*, we consider "whether there are less stringent means by which the matter can be resolved or by which the amount owing can be secured." *Lucky-Goldstar*, 636 F. Supp. at 1063. Riva Suggests that posting security would be an imposition (Pl.'s Reply at 3 n.2 and 8), but fails to establish that it lacks resources to do so. The Court here firmly believes, as did the court in *Lucky-Goldstar* and other controlling Illinois cases, that ". . . the proper way to make the documents available in this litigation without unnecessarily impinging upon the rights of the parties to the fee

dispute is to require security in the amount of [WMH's] fee claim, in return for which [WMH] will be required to produce the documents." 636 F. Supp. at 1064-65. If the Court followed Riva's suggestion and released the documents without payment or security, WMH's leverage to effectuate its valid collection method would be destroyed. *McDermott, Will & Emery v. Ogle*, 01 C 4837, 2001 WL 145696, at *5 (N.D. Ill., Nov. 15, 2001) (client does not have absolute right to immediate possession of documents if releasing documents would neutralize the effectiveness of attorney's valid collection method).[2]

## CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motion to compel the return of its documents. (doc. # 27-1). So that this ruling does not hinder the progress of the case, the Court orders that Riva and WMH establish a method of posting security for the alleged $230,000 due and owing in attorneys' fees. The Court further directs that WMH immediately assemble the documents being held subject to the lien, so that they can be produced without delay once the security is posted. At this time, the Court will not set forth the specific security arrangement that will be necessary, but will leave it to the parties, acting in good faith, to determine the amount and kind of security that will

---

[2]Riva raises two other arguments that we address briefly. *First*, Riva suggests that WMH's failure to immediately sue in state court to collect the fees somehow compromises WMH's lien rights (Pl. Reply at 3). Riva offers no authority for this suggestion, which the Court rejects. Indeed, it strikes the Court that one point of the common law lien is to give the attorney a means to induce payment short of litigation.

*Second*, Riva argues that WMH should produce the documents because they "lack[ ] any intrinsic financial value anyway" (Pl. Reply at 8). Again, this argument misconceives that purpose of the retaining lien: to secure payment of fees by allowing the attorney to hold onto something that is of value to the client, even if it has no "intrinsic" value. Thus, as did the *Lucky-Goldstar* court, "we do not believe the intrinsic value of the property in any way affects an attorney's right to invoke the lien." 636 F. Supp. at 1064 n.8.

suffice. The matter is set for a status conference on March 15, 2002 at 9:00 a.m. for Riva and WMH to report as to the agreed-upon security.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

**Dated: March 6, 2002**