Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1390 | **DATE** | 7/12/2002 |
| **CASE TITLE** | Riva Technologies, Inc. vs. Zack Electronics, Inc. and Dennis Awad | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Wolf, Moskowitz, Holland & Matern's motion for a determination of its claim of attorneys' fees [doc. # 45] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 15 2002 | 53 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | WB docketing deputy initials | |
| | Mail AO 450 form. | | 7/12/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| JJK | courtroom deputy's initials | Date/time received in central Clerk's Office | JJK77 mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RIVA TECHNOLOGIES, INC., an Illinois )
corporation, d/b/a "Joseph Electronics" )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )    No.   01 C 1390
                                       )
ZACK ELECTRONICS, INC., a California   )    Magistrate Judge Schenkier
corporation, and DENNIS AWAD,          )
                                       )
        Defendants.                    )

### MEMORANDUM OPINION AND ORDER

This lawsuit, which invokes the diversity jurisdiction of the Court, arises out of various disputes among the parties in connection with the purchase by plaintiff, Riva Technologies, Inc., of a significant potion of the electronics business in Illinois that was being operated by Zack Electronics, Inc. Riva was represented by the law firm of Wolf, Moskowitz, Holland & Matern (WMH&M), in the negotiation and closing of the asset purchase agreement and related agreements, in connection with disputes that arose subsequent to the closing on the transaction, and in the commencement of this lawsuit in February 2001.

On or about August 31, 2001, Riva discharged WMH&M. Thereafter, on September 6, 2001, WMH&M was given leave to withdraw as counsel for plaintiff, and the law firm of Freeborn & Peters was granted leave to appear as replacement counsel on behalf of the plaintiff (doc. # 16).[1] In that order, the district court did not retain jurisdiction over any fee disputes that might exist between Riva and WMH&M.

---

[1] Riva recently has replaced the replacement firm: on July 8, 2002, the law firm of Kelley Drye & Warren LLP was given leave to appear on behalf of Riva, and the Freeborn & Peters firm was given leave to withdraw (doc. # 52).



And, indeed, there are significant disputes about the fees claimed by WMH&M: approximately $230,000 for services rendered during a period of some seven months. When Riva first refused to accede to WMH&M's demands for payment, WMH&M refused Riva's demand to turn over non-work product documents from WMH&M's client file, claiming an attorney's retaining lien under Illinois common law. The dispute over WMH&M's retention of documents resulted in Riva filing a motion to compel their production. The Court denied the motion to compel, but – so as not to frustrate the progress of this litigation – ordered the parties to come to an agreement by which Riva could have access to its client file in exchange for its posting of security as against obligations allegedly outstanding to WMH&M. *Riva Technologies, Inc. v. Zack Electronics, Inc.*, No. 01 C 1390, 2002 WL 368520 (N.D. Ill., Mar. 7, 2002). Therefore, on March 19, 2002, the parties agreed that in lieu of withholding the documents, WMH&M would accept in the form of $60,000 in cash to be held in an escrow account maintained by Freeborn & Peters, and a $55,000 personal guaranty signed by the principals of Riva and their spouses (doc. # 40). Pursuant to this agreement, the security was posted, and WMH&M, in turn, surrendered Riva's client file.

In ruling on the motion to compel, the Court, citing *Lucky-Goldstar International, Inc. v. International Manufacturing Sale Co., Inc.*, 636 F. Supp. 1059 (N.D. Ill. 1986), expressly held that the Court "does not have jurisdiction to decide the underlying fee dispute, which must be reserved for resolution in state court." *Riva Technologies, Inc.*, 2002 WL 368520, * 3. Nonetheless, WMH&M now has filed a motion for determination of its claim for attorneys' fees (doc. # 45). WMH&M argues that even though its *quantum meruit* claim for attorneys' fees is a state law claim over which this Court would not ordinarily have subject matter jurisdiction (since it falls under neither the Court's diversity jurisdiction nor its federal question jurisdiction), the Court should

2

exercise supplemental jurisdiction over the fee dispute. Riva argues that WMH&M's claim for fees does not fall within the Court's supplemental jurisdiction. Riva further argues that even if the fee dispute does fall under the Court's supplemental jurisdiction, the Court should exercise its discretion to decline supplemental jurisdiction because adjudication of the fee dispute, among other things, would require the Court to segregate those fees appropriately related to the present action from those for unrelated work; would create unfairness and inefficiency stemming from WMH&M and Riva being able to litigate only some of their claims in federal court (and having to litigate fees claimed for unrelated work in state court); and would embroil the Court in issues concerning alleged malpractice.

Pursuant to consent of the parties, as authorized by 28 U.S.C. § 636(c), the case has been reassigned to this Court for all proceedings, including the entry of final judgement (doc. # 34). For the reasons that follow, the Court finds that the state law fee dispute between WMH&M and Riva does not fall within the Court's supplemental jurisdiction, and thus denies WMH&M's motion.

## I.

Broadly stated, supplemental jurisdiction is a doctrine that allows a federal court to exercise jurisdiction over a matter which would otherwise only be within the broader, general ambit of a state court. The essential condition for a federal court's exercise of supplemental jurisdiction is that the state law matter be so related to a case or controversy properly within the court's jurisdiction that the claims all "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725-26 (1966). If that condition is met, then the "claim is close enough to the federal (or other) claim that confers federal jurisdiction to be part of the same case, [and] there is no constitutional bar to the assumption of federal jurisdiction over the claim, because Article III

3

confers federal jurisdiction over cases or controversies rather than over claims. . . ." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1181-82 (7th Cir. 1993).

This supplemental jurisdiction doctrine, which originated in judicial decisions, was codified in 1990 at 28 U.S.C. § 1367. That statute provides, in relevant part:

> (a) ...in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . .
>
> * * *
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Although this statutory formulation of the supplemental jurisdiction doctrine does not use the "common nucleus of operative fact" language found in *Gibbs*, the Seventh Circuit has made plain that "the new statute is intended to codify rather than to alter the judge-made principles of pendent and pendent party jurisdiction . . ." *Brazinski*, 6 F.3d at 1182; *see also Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1298 (7th Cir. 1995). Thus, the existence of a common nucleus of operative fact remains the touchstone for the existence of supplemental jurisdiction.

4

The Seventh Circuit has explained that a "loose factual connection between the claims is generally sufficient" to meet the common nucleus of operative fact standard. *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995). However, the Seventh Circuit also has made clear that this does not reflect the broadening of supplemental jurisdiction: both *Gibbs* and Section 1367 authorize federal courts to exercise jurisdiction to the full extent permitted by the case or controversy requirement of Article III. *Baer*, 72 F.3d at 1299; *Brazinski*, 6 F.3d at 1181-82.

Case law within this jurisdiction has fleshed out when the connection between the claims is sufficient to bring the supplemental claim within Article III jurisdiction, or is too tenuous to satisfy that standard. For example, in *Ammerman*, the Seventh Circuit held that the district court had properly recognized and exercised supplemental jurisdiction over state law assault and battery claims because they were sufficiently connected to the plaintiff's Title VII claim against her employer for sexual harassment. The appeals court reasoned that since the basis of the Title VII claims was the inadequate response of the defendant to the alleged assault and battery, the facts underlying those tort claims were "highly relevant to the determination of whether appropriate remedial action had been taken by the [employer]." 54 F.3d at 425. Put another way, the "loose factual connection" standard was met because "without reference to facts surrounding the assault, there would have been no sexual harassment claim against the employer." *Id.* at 424.

By contrast, in *Eager v. Commonwealth Edison Co.*, 187 F. Supp. 2d 1033 (N.D. Ill. 2002), the district court held that supplemental jurisdiction did not exist over the plaintiff's state claims stemming from the employer allegedly forcing the plaintiff to work when exhausted, which the plaintiff claimed resulted in her suffering an electrocution. The district court reasoned that unlike the case in *Ammerman*, the facts involving the electrocution had nothing to do with the facts

5

underlying plaintiff's sexual harassment and retaliation claims – that is, the federal and state claims were so unrelated that the federal claim "would be unaffected if the electrocution claims were dismissed."187 F. Supp. 2d at 1040. Thus, the district court found that the federal claim did not "involve the same set of facts that animated the state claim," and thus dismissed the state law claims based on the alleged electrocution. *Id.* at 1040. At the same time, the district court held that supplemental jurisdiction existed over plaintiff's state law assault claims that were based on alleged conduct that also was directly implicated in the sexual harassment claim. *Id. See also Jackson v. Local 705, Int'l Bhd. of Teamsters*, 2002 U.S. Dist. LEXIS 4908 (N.D. Ill. 2002) (dismissing state law defamation claims insofar as those claims were based on statements to persons who were not in a position to have engaged in the discriminatory hiring practices alleged in the Title VII claims, but exercising supplemental jurisdiction over those state law defamation claims that were based on statements made by defendants that a jury could reasonably conclude could have led to the alleged Title VII discrimination).

## II.

With these principles of supplemental jurisdiction in mind, we turn to the question of whether WMH&M's fee dispute with Riva is part of the "common nucleus of operative fact" that underlies the parties' claims that are within the diversity jurisdiction of the Court. For the reasons that follow, the Court concludes that this case does not fall within the scope of supplemental jurisdiction.

### A.

We begin with a consideration of the factual allegations that give rise to the underlying dispute between the parties. Riva asserts that the defendants have failed to perform certain aspects of the asset purchase agreement and have breached other aspects of the agreement and various side

6

agreements signed in December 2000 and January 2001 (First Am. Compl., Count I). Riva further alleges that defendants' conduct was fraudulent (*Id.*, Count II), and that by alleged malfeasance and nonfeasance in December 2000 and thereafter, defendants tortiously interfered with Riva's contractual and business expectations (*Id.*, Count III). In addition, Riva alleges that defendants made various defamatory comments about Riva, which caused Riva to suffer damage (*Id.*, Count IV). Defendants deny the material allegations of the complaint, and assert various affirmative defenses. In addition, the defendants have counterclaimed against Riva for breach of contract (Counterclaim, Count I), based on alleged breached by Riva of the sales contracts, and have claimed that Riva tortiously interfered with defendants' legitimate business expectations (*Id.*, Count II). Defendants also have asserted a third-party complaint against Messrs. Annella and Hahamy, the principle officers of Riva, for breach of fiduciary duty stemming from their alleged conduct that was to the detriment of Zack while they were employed by Zack prior to the asset sale to Riva (Third Party Complaint, Count I); tortious interference with contractual relationships and expectancies (*Id.*, Count II); false designation of origin, based on conduct that allegedly occurred between 1998 and 2000 (*Id.*, Count III); and two counts of fraud, based on conduct that occurred either shortly before or after the closing of the asset sale agreement in January 2001 (*Id.*, Counts IV and V).

By contrast, the fee dispute involves questions of interpreting the fee agreement between Riva and WMH&M; determining what work related to post-closing disputes and what work related to this lawsuit; assessing the value of services provided by WMH&M and the reasonableness of the time spent and the amounts charged; and (if Riva really is serious about this), considering claims of malpractice. Plainly, the facts involved in the fee dispute between Riva and WMH&M are entirely separate from the facts that underlie the claims, counterclaims, and third-party claims in this case.

7

As was true with the supplemental claims dismissed by the district court in *Eager*, the diversity claims asserted by the parties in this case do not "involve the same set of facts that animate[d]" the attorneys' fee dispute. 187 F. Supp. 2d at 1040. There is no factual connection between those claims at all, much less a "loose factual connection."

WMH&M tacitly acknowledges this point. Thus, the firm argues that proper inquiry is "not whether the entitlement to fees arose out of the same body of facts being litigated," which is the touchstone of the common nucleus of operative fact test, but "rather whether the litigation that the lawyer worked upon arose out of the same body of facts" (WMH&M Reply Mem. at 3). However, that position disregards the language of Section 1367, and thus must be rejected if we are to respect the well-settled rule that "[f]ederal courts are courts of limited jurisdiction," and thus "possess only that power authorized by Constitution and statute, . . . , which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994).

Indeed, to accept WMH&M's argument would open the door to federal jurisdiction over a myriad of collateral state law disputes that parties may have with various professionals or vendors retained to assist them in federal court litigation. It is not uncommon for a party to retain a variety of personnel to support the litigation effort, such as consulting and testifying experts; outside photocopying services; translators in a case involving foreign language documents; and graphics companies to prepare trial exhibits. A party, or its lawyer, may enter into contractual arrangements with these types of experts and vendors, which will be governed by state law. If all that is necessary for a fee dispute to fall within the purview of a federal court is for it to relate to services arising out of the litigation, then we see no principled reason why contractual disputes with these other experts or vendors likewise would not fall within the sweep of supplemental jurisdiction as WMH&M would

have the Court define it. We do not believe that the doctrine of supplemental jurisdiction was intended to create such a gaping hole in the principle of limited federal jurisdiction.

This conclusion is consistent with the case law within this circuit concerning the exercise of jurisdiction over fee disputes. In *Bounougis v. Peters*, 369 F.2d 247, 249 (7th Cir. 1966), the Seventh Circuit upheld a district court's decision not to exercise jurisdiction over a fee dispute, reasoning that the underlying litigation had been terminated long before the fee dispute was presented to the court; there was no factual relationship between the litigation and the fee dispute; the court had no property associated with the litigation within its custody or control; and the fee dispute had already been pending in state court for several years before the district court was asked to exercise jurisdiction over it. By contrast, in cases where courts within this circuit have exercised jurisdiction over fee disputes, the cases have presented situation where the fee dispute was acknowledged in a settlement agreement that was approved by the district court, and that provided for the district court to resolve the dispute, *Baer*, 72 F.3d at 1302; where the fee dispute arose in the context of a federal statutory claim that authorized an award of attorneys' fees to a prevailing party, *Baer, id.*; where the attorney had perfected a statutory lien that allowed recovery of attorneys' fees out of the proceeds of the litigation, *Clarion Corp. v. The American Home Products Corp.*, 464 F.2d 444, 445 (7th Cir. 1972); *Acorn Bank Shares, Inc. v. Suburban Bank Corp., Inc.*, No. 85 C 329, 1987 WL 18950, * 3 (N.D. Ill., Oct. 20, 1987); and where the district court, at the time an attorney withdrew from the case, retained jurisdiction of any disputes concerning fees. *Acorn Bankshares, Inc.*, 1987 WL 18950, at * 4.

While not a perfect fit, this case has more in common with *Bounougis* than with the cases in which courts within this circuit have entertained fee disputes. As in *Bounougis*, there is no fund

associated with the litigation that is within the Court's custody or control – the escrow created is in the hands of plaintiff's (now former) counsel, Freeborn & Peters. Most important, as in *Bounougis*, there is no connection – loose or otherwise – between WMH&M's fee dispute with Riva and the multitude of claims between the parties to this lawsuit.

Moreover, this case is dissimilar from the cases in which jurisdiction has been exercised in critical respects. This case does not involve a federal statute that authorizes the Court to award attorneys' fees, as was the case in *Baer*. Moreover, this case does not involve the assertion of a statutory lien against proceeds with the custody of the Court or that have been produced by the litigation, as was the case in *Clarion* and *Acorn Bankshares*. The escrow fund created by the agreement between Riva and WMH&M provides a source of payment of any fees to which WMH&M may ultimately be entitled to recover, separate and apart from any recovery Riva may obtain in this case. Finally, the Court has taken no affirmative action to exercise jurisdiction over the fee dispute, such as by approving a settlement agreement that authorized the Court to resolve fee disputes, as in *Baer*, or by allowing an attorney to withdraw from a case but retaining jurisdiction to resolve the fee dispute, as in *Acorn Bankshares*. There is no settlement agreement here, and WMH&M sought and was granted withdrawal from the case without the condition that the Court would retain jurisdiction over the fee dispute. And, when presented with a dispute concerning WMH&M's retention of attorney papers pursuant to a common law (not statutory) lien, the Court specifically disavowed any exercise of jurisdiction over the underlying fee dispute, and instead resolved only the question of WMH&M's right to retain the papers in the absence of some other suitable security. Thus, we find no convincing basis in the case law within this jurisdiction to find

that the state law fee dispute between Riva and WMH&M is within the Court's supplemental jurisdiction.[2]

**B.**

WMH&M also relies on a number of cases outside the Seventh Circuit to support its request that the Court exercise jurisdiction to decide the fee dispute. To the extent that those decisions differ from the approach employed by the Seventh Circuit, this Court would not be at liberty to follow them, even if the Court found those decisions persuasive. But, in any event, we do not find the analysis employed by courts in other circuits to be persuasive.

As one example, we consider the decision in *Cluett, Peabody & Co. v. CPC Acquisition*, 863 F.2d 251, 256 (2d Cir. 1988). In that case, the appeals court affirmed the exercise of jurisdiction over a fee dispute. In so doing, the court did not discuss the common nucleus of operative fact

---

[2]WMH&M asks the Court to disregard the *Bounougis* decision on the ground that it predates the passage of Section 1367, and "represents a minority view to which the Seventh Circuit no longer adheres" (WMH&M's Reply at 3 n. 2). The Court finds neither argument persuasive. *First*, the fact that *Bounougis* predates the codification of Section 1367 is irrelevant, inasmuch as the Seventh Circuit has squarely held that Section 1367 was "intended to codify rather than to alter the judge-made principles of pendent and pendent party jurisdiction." *Brazinski*, 6 F.3d at 1182. *Second*, WMH&M offers no Seventh Circuit authority for the proposition that *Bounougis* is no longer good law. To the contrary, we note that in *Baer* the Seventh Circuit cited *Bounougis* as an example of a case holding that there was no jurisdiction to hear a fee dispute between the client and an attorney, without suggesting – much less holding – that that decision was incorrect or no longer binding precedent. *Baer*, 72 F.3d 1300 at n.5.

WMH&M also has cited two recent Seventh Circuit decisions which the Court finds add nothing to the discussion of supplemental jurisdiction here. *Dale M. v. Board of Education*, 282 F.3d 984 (7th Cir. 2002) (WMH&M Reply Mem. at 4) involved an order that an attorney return fees that had been allowed under a federal statute that authorized the award of attorneys' fees – this case, of course, involves no such statutory scheme. WMH&M also cites *Abbott Laboratories v. CVS Pharmacy, Inc.*, 290 F.3d 854 (7th Cir. 2002), for the proposition that "'[c]ontroversies about attorneys' fees for work in the underlying suit are prime examples' of circumstances where 'supplemental jurisdiction allows resolution of disputes that are closely related to the original litigation'" (WMH&M Reply Mem. at 3). As a preliminary matter, WMH&M's quotation of *Abbott Laboratories* omits a key word: the Seventh Circuit said that supplemental jurisdiction "sometimes" allows the resolution of disputes that are closely related to the original litigation. 290 F.3d at 858. That general proposition is, of course, unremarkable. But, in stating that general proposition, the Seventh Circuit did not provide guidance as to when fee disputes are within federal jurisdiction and when they are not. Nor could the Seventh Circuit have done so, since the *Abbott Laboratories* case did not present a question of jurisdiction over a fee dispute. Thus, any comments about federal jurisdiction over fee disputes in the *Abbott Laboratories* case were dicta, and the Supreme Court has instructed that "[i]t is to the holdings of . . . cases rather than their dicta, that we must attend, . . ." *Kokkonen*, 511 U.S. at 379.

11

standard, but instead characterized the exercise of discretion as being based entirely on "discretionary factors." 863 F.2d at 256. The appeals court identified four such factors: (1) the trial court's familiarity with the subject matter of the suit, and the work performed by the law firm in connection with the lawsuit; (2) the Court's responsibility to "protect its own officers in such matters as fee disputes"; (3) the convenience of litigating in federal court as opposed to state court; and (4) considerations of judicial economy. *Id.* The appeals court agreed with the trial court's determination that, on balance, these factors weighed in favor of exercising jurisdiction, "as a matter of discretion." *Id.*

At the threshold, we find this analysis unpersuasive because it focuses solely on the question of whether a federal court should exercise jurisdiction over the fee dispute as a discretionary matter, without ever squarely addressing the antecedent question of whether the fee dispute comes within the case or controversy standard necessary for the case to be in federal court in the first place. To be sure, Section 1367 (and before that, *Gibbs*) makes clear that even if a trial court possesses supplemental jurisdiction over a state law claim, it is within the discretion of that court to decline to hear the claim, based on a consideration of various factors. However, in order to decline the exercise of jurisdiction, there must be supplemental jurisdiction that can be exercised in the first place. And the *Cluett* decision – and many cases like it that WMH&M relies upon – never comes to grips with the fundamental question of why a fee dispute is part of the constitutional case or controversy.

Moreover, even accepting *Cluett* on its own terms, the Court finds that the considerations used in that case either do not apply here or are unpersuasive. As to the first consideration, the Court has no familiarity with the amount and quality of work performed by WMH&M prior to its

12

withdrawal from the suit. There was very little in-court activity in this case prior to the withdrawal: the plaintiff filed a complaint; service was made; defendants were granted additional time to respond to the complaint; and plaintiff filed a first amended complaint. Moreover, what few court proceedings took place in the case were conducted by the district judge then presiding in the case, and occurred long before the parties first appeared before this Court. Thus, the Court would have no greater familiarity with the work done by WMH&M than would a state court hearing this dispute – and as a result, neither convenience nor judicial economy (the third and fourth *Cluett* factors) would be served by having this Court resolve the dispute.

The second *Cluett* consideration – protecting attorneys as officers of the court in matters such as fee disputes – assumes that it is the attorney, and not the client, that needs protection. There is no way for a court to know whether that is so in any given situation without delving into the merits of the dispute. But, a court should not delve into the merits unless it first determines that it has the jurisdiction to do so. Moreover, even viewing this consideration as a policy matter, the Court is not persuaded that it should give special protection to attorneys (as opposed to other professionals who serve clients in litigation in federal court) when disputes arise. That is particularly so when attorneys, perhaps more than other professionals, have ample means to protect the fees charged for the services that they render: such as, by clearly specifying the fee arrangement in a written agreement; by demanding an adequate retainer or other security; and by requiring prompt payment of bills before the client is hundreds of thousands of dollars in arrears. And, in the end, if disputes arise, attorneys – like other professionals – have legal recourse: they may sue in state court, which WMH&M is free to do here.

## CONCLUSION

For the foregoing reasons, the Court concludes that the fee dispute between WMH&M and Riva is not within the supplemental jurisdiction of this Court. Accordingly, WMH&M's motion for a determination of its claim of attorneys' fees (doc. # 45) is denied.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: July 12, 2002**